UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**RICHARD FORLIZZO,**

 Plaintiff,

vs.               Case No. 8:14-cv-3140-T-27MAP

**RETRIEVAL MASTERS CREDITORS
BUREAU, INC. d/b/a AMERICAN
MEDICAL COLLECTION AGENCY,**

 Defendant.
_____/

## ORDER

  **BEFORE THE COURT** is Defendant's Motion for Summary Judgment (Dkt. 47), to which Plaintiff responded (Dkt. 54). Upon consideration, Defendant's motion (Dkt. 47) is **GRANTED** in part and **DENIED** in part.

**Background**

  Plaintiff alleges that Defendant violated the Fair Debt Collections Practices Act, 15 U.S.C § 1692, *et seq.*, ("FDCPA"), the Florida Consumer Collection Practices Act, Florida Statute § 559.55, *et seq.*, ("FCCPA"), and the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.*, ("TCPA"). (Dkt. 23). The allegations arise from approximately 96 phone calls made to Plaintiff's cellular telephone number ending in -2106 from approximately October 2013 through April 2014, for the purpose of collecting a debt of $57.85. (Forlizzo Aff., Dkt. 54-1, ¶¶ 4-5; Wollman Aff., Dkt. 48-1, ¶ 3; Forlizzo Dep., Dkt. 55-7 at 26:1-13). The first 94 calls were unanswered.

1

(Forlizzo Dep., Dkt. 55-7 at 28:2-4). After two calls were answered, they stopped. (Forlizzo Dep., Dkt. 55-7 at 27:6-17).

The debt Defendant was attempting to collect was for lab services provided by Quest Diagnostics ordered by Plaintiff's physician, Dr. Hicks. (Dkt. 55-6; Wollman Aff., Dkt 48-1, ¶ 6). Plaintiff disputes the validity of the debt based on a waiver agreement between Dr. Hicks and Quest in which Quest waived charges for patients insured by United Healthcare. (Hicks Dep., Dkt. 55-5 at 35:3-15). In addition to disputing the validity of the debt, Plaintiff alleges Defendant attempted to collect the debt without providing the required validation notice and with the intent to harass. (Dkt. 23, ¶¶ 38-48, 57-65). He also alleges Defendant called his cell phone using an automatic telephone dialing system ("ATDS") without his consent. (Dkt. 23, ¶¶ 71-78).

Defendant moves for summary judgment, arguing that there were no FDCPA or FCCPA violations because Plaintiff cannot show that it failed to mail the required notice of debt and because the undisputed evidence does not demonstrate egregious conduct. Further, Defendant argues that either the debt was valid or if invalid, it did not have actual knowledge that it was invalid. Lastly, Defendant argues that Plaintiff fails to show that it used an ATDS, an essential element of his TCPA claim, and alternatively, that Plaintiff consented to calls on his cell phone.

**Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable

substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted). Facts are viewed and reasonable inferences are drawn in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

"A nonmoving party [here, Plaintiff], opposing a motion for summary judgment supported by affidavits cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." *Avrigan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). As such, the non-moving party's evidence "cannot consist of conclusory allegations or legal conclusions." *Id.* (citations omitted).

**Discussion**

**I.     Count I: Violations of the FDCPA – 15 U.S.C. § 1692 *et seq.***

Defendant moves for summary judgment on Count I of Plaintiff's First Amended Complaint, which alleges violations of the FDCPA (Dkt. 23). The FDCPA imposes civil liability on debt collectors who fail to comply with its provisions. 15 U.S.C. § 1692k(a); *Baker v. G.C. Svcs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). To prevail on his FDCPA claim, Plaintiff must show "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debtor collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Fuller v. Becker & Poliakoff, P.A.*, 192 F.Supp.2d 1361, 1366 (M.D. Fla. 2002) (citing *Kaplan v. Assetcare, Inc.*, 88 F.Supp.2d 1355, 1360-1361 (S.D. Fla. 2000) (quoting *Silbey v. Firstcollect Inc.*, 913 F.Supp. 469, 470 (M.D. La. 1995))).

Plaintiff alleges Defendant violated the FDCPA by failing to provide the required written notice of debt within five days after the initial communication as required by § 1692g(a), engaging in harassing conduct in connection with collection of the alleged debt in violation of § 1692d(5),

and using false representation in attempting to collect a disputed debt. Defendant contends there is no evidence that it failed to mail notice of the debt, there is no evidence of egregious conduct, and because the underlying debt was valid, it could not have violated § 1692e.

### A.   Notice of Debt - § 1692g

Plaintiff alleges Defendant violated § 1692g(a) by failing to provide the required written notice of debt within five days after initial communication because he never received any written communication from Defendant. (Dkt. 23, ¶ 41; Forlizzo Aff., Dkt. 54-1, ¶¶ 8,10; Forlizzo Dep., Dkt. 55-7 at 19:7-14). Defendant contends an absence of evidence it failed to mail the five day written notice is grounds for granting summary judgment in its favor. (Dkt. 47 at 16-18).

The FDCPA requires a debt collector, within five days of an initial communication, to send the debtor written notice containing the amount of the debt, identifying the creditor to whom the debt is owed, a disclosure that the debtor has thirty days to dispute the debt or the debt would be deemed valid, a statement describing the procedure for obtaining verification of the debt, and the procedure for obtaining the name and address of the original creditor. 15 U.S.C. § 1692g(a). The FDCPA "does not require that a Validation of Debt Notice must be received by a debtor. Instead, the plain language states that such a Notice need only be sent to a debtor." *Mahon v. Credit Bureau of Placer County Inc.*, 171 F.3d 1197, 1201 (9th Cir. 1999).

Defendant maintains account notes for each account in the course of its regularly conducted business activities. (Wollman Aff., Dkt. 48-1, ¶ 4). After it receives an account, a collection letter is sent by a third party mailing service. (Wollman Dep. Dkt. 61-1 at 16:12-13; 17:17-22). Defendant does not maintain a copy of that letter, but tracks when letters are produced to the third party (Wollman Dep., Dkt. 61-1 at 17:16, 18:17-22). Defendant also maintains statistical reports showing when letters are mailed to a debtor. (Wollman Dep. Dkt. 61-1 at 18:23-19:2).

4

Quest referred the debt to Defendant on July 26, 2013. (Wollman Aff., Dkt. 48-1, ¶ 3). Defendant's Rule 30(b)(6) representative was unable to testify, however, when it sent Plaintiff's information to the third party mailing service or if a debt collection letter was actually sent. (Wollman Dep., Dkt. 61-1 at 19:8-15; 19:21-20:9). In *Mahon*, the creditor showed through its standard business practice that its system generated the debt notice, another machine addressed and stuffed the notice in an envelope, a creditor employees cross checked the outgoing notices, and the notices were tracked and recorded by name and date. 171 F.3d at 1201-1202. Here, however, the record does not establish the business practices of Defendant's third party mailing service or Defendant's statistical reports showing when Plaintiff was sent a debt collection letter.

Plaintiff avers that he never received an invoice for the services provided by Quest. (Forlizzo Aff., Dkt. 54-1, ¶ 10). He further testified that he never received a letter from Defendant regarding debt collection. (Forlizzo Dep., Dkt. 55-7 at 19:7-14). Defendant argues that Plaintiff has the burden of proving that it failed to mail the required notice and cannot simply rely on non-receipt. (Dkt. 47 at 18). But the FDCPA requires Defendant to send the notice and the rebuttable presumption that mail was received arises only on proof that mail was "properly addressed, had sufficient postage, and was deposited in the mail." 15 U.S.C. § 1692g(a); *Konst v. Florida E. Coast Ry. Co.*, 71 F.3d 850, 851 (11th Cir. 1996).[1]

Viewing the evidence in the light most favorable to Plaintiff, a genuine issue of material fact

---

[1] "The common law has long recognized a rebuttable presumption that an item properly mailed was received by the addressee. The 'presumption of receipt' arises upon proof that the item was properly addressed, had sufficient postage, and was deposited in the mail." *Konst*, 71 F.3d at 851 (citing *Nunley v. City of Los Angeles*, 52 F.3d 792, 796 (9th Cir.1995)). The presumption " is not a conclusive presumption of law, but a mere inference of fact, founded on the probability that the officers of the government will do their duty and the usual course of business; and, when it is opposed by evidence that the letters never were received, must be weighed with all the other circumstances of the case, by the jury in determining the question whether the letters were actually received or not." *Id.* at n.1 (quoting *Rosenthal v. Walker*, 111 U.S. 185, 193-94, 4 S.Ct. 382, 386, 28 L.Ed. 395 (1884)). Therefore, to raise a "rebuttable presumption of receipt" as to the sending of the required notice, the debt collector must show the notice was properly addressed and placed in the care of the postal service. *See Konst*, 71 F. 3d at 851; *Mahon*, 171 F.3d at 1201.

5

exists as to whether Defendant sent the required notice in accordance with 15 U.S.C. § 1692g(a). Defendant's Motion for Summary Judgment on Plaintiff's FDCPA §1692g(a) violation claim is therefore denied.

### B. Intent to Harass - § 1692d(5)[2]

Defendant contends that numerous phone calls alone, the vast majority of which were unanswered, without evidence of harassing or abusive conduct, supports summary judgment on Plaintiff's FDCPA harassment claim. (Dkt. 47 at 18-22). Plaintiff counters that Defendant violated § 1692d(5) by making numerous phone calls on an invalid debt. (Dkt. 54 at 14-15).

A debt collector who "caus[es] a telephone to ring or engag[es] any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" violates the FDCPA. 15 U.S.C. § 1692d. "[C]laims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985) (letters with deceptive or false threats of legal action did not violate § 1692d).

Courts consider a variety of factors when determining if a debt collector has violated § 1692d(5), including the volume of calls, when the calls are made, who the debt collector is attempting to reach, if the calls continued after the debt collector was informed the debt is not valid, and the pattern of the calls. *See Meadows v. Franklin Collection Service, Inc.*, 414 F.App'x. 230, 233 (11th Cir. 2011) (reversing summary judgment in favor of debt collector based on evidence of emotional stress caused by calls, the volume and frequency of the calls, and that the plaintiff

---

[2] Both parties blend their respective arguments regarding violations of the FDCPA § 1692d(5) and FCCPA § 559.72(7). However, "[t]here are intentional differences between the FDCPA and FCCPA, and a violation of the federal statute does not automatically constitute a violation of the state statute in situations where the FCCPA is distinguishable." *Beeders v. Gulf Coast Collection Bureau, Inc.*, No. 8:09-cv-00458-EAK-AEP, 2010 WL 2696404, at *6 (M.D. Fla. July 6, 2010), *aff'd*, 432 F.App'x 918 (11th Cir. 2011). Therefore, each alleged violation is addressed separately.

informed the debt collector that the debt was not plaintiff's, and notwithstanding, the calls continued); *Tucker v. CBE Group, Inc.*, 710 F.Supp.2d 1301, 1305 (M.D. Fla. 2010) (granting summary judgment to debt collector notwithstanding volume of calls, since debt collector never spoke to the debtor, and the calls were made to reach a debtor other than the plaintiff). "Summary judgment is routinely granted in favor of debt collectors where the party alleging a violation of the FDCPA does not present evidence of harassing conduct other than a high volume of calls." *Lardner v. Diversified Consultants*, 17 F. Supp.3d 1215, 1225 (S.D. Fla. 2014) (citations omitted).

As noted, some 96 calls were made to Plaintiff over 7 months in an attempt to collect the Quest debt, only two of which were answered. (Forlizzo Dep., Dkt. 55-7 at 26:1-13; 42:11-13; Forlizzo Aff., Dkt. 54-1, ¶ 5; Wollman Aff., Dkt. 48-1, ¶¶ 2-3). On occasion, Defendant would call three times a day,[3] and on other occasions, there were no calls for three to four days. (Forlizzo Dep., Dkt. 55-7 at 35:2-6). Approximately 94 calls were made before Plaintiff spoke to a collector.[4] (Forlizzo Dep., Dkt. 55-7 at 17:12). Prior to answering the first call, Plaintiff was unaware of why he was being called. (Forlizzo Dep., Dkt. 55-7 at 43:9-12).

In the first call, the collector identified himself as associated with Defendant and explained that he was collecting a debt for Quest Diagnostics. (Forlizzo Dep., Dkt. 55-7 at 18:16-25). In the second call, the collector identified himself as associated with American Medical Collection Agency, advised he was collecting a medical debt, updated Plaintiff's address, provided an option to view the medical bill online, and advised that he would send a letter. (Dkt. 60). Plaintiff did not ask the collector to stop communicating with him. (Forlizzo Dep., Dkt. 55-7 at 42:7-10; Dkt. 60). After the

---

[3]Plaintiff's call logs show two days where Plaintiff was called more than once a day: October 28, 2013 - two missed calls and October 29, 2013 - two missed calls. (Dkt. 54-2).

[4]Plaintiff's call logs show both incoming and missed calls from 800-804-0057. (Dkt. 54-2). The incoming calls show March 28, 2014 and April 8, 2014, however, Plaintiff believes the first call was on April 8, 2014. (Dkt. 54-2).

7

second call, the calls stopped. (Forlizzo Dep., Dkt. 55-7 at 22:16-23:3).

Defendant argues that the mere volume of calls, absent other evidence of harassing conduct, is insufficient to show a violation of § 1692d(5). (Dkt. 47 at 18-22). In response, Plaintiff seemingly argues that because Defendant cannot show that the debt was valid, it violated §§ 1692f and 1692e, and therefore the multiple calls constituted an intent to harass. (Dkt. 54 at 14-15). Plaintiff points to no authority to support his argument, however, that a violation of a different section of the FDCPA constitutes a violation of § 1692d(5). (Dkt. 54 at 14-15).

On this claim, other than the number of calls, Plaintiff points to no conduct by or on behalf of Defendant that demonstrates an intent to harass.[5] Without more, this claim cannot survive. *See Lardner*, 17 F.Supp.3d at 1225. Even considering the evidence in the light most favorable to Plaintiff, a reasonable jury could not find that Defendant violated § 1692d(5) merely because of the number of calls. *See Meadows*, 414 F.App'x. at 233; *Jeter*, 760 F.2d at 1179; *Lardner*, 17 F. Supp.2d at 1225; *Tucker*, 710 F.Supp.2d at 1305. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's §1692d(5) claim is granted.

## C. Validity of the Underlying Debt - § 1692e[6]

Plaintiff alleges Defendant violated §§ 1692e(2)(a), (4), (5) and (10) because the Quest debt was invalid, and therefore Defendant used deceptive means in its collection efforts. (Dkt. 23, ¶ 42; Dkt. 54 at 15). Defendant contends the debt was valid, relying on the Quest lab requisition form which identifies Plaintiff as "Self Pay" and the Quest invoice identifying Plaintiff as the

---

[5]Although Plaintiff does not rely on any additional evidence to support this claim, in deposition, he testified he has interrupted sleep, increased stress, and more frequent blackouts. (Forlizzo Dep., Dkt. 55-7 at 53:13-55:6). Plaintiff, however, does not argue this was caused by the phone calls. (Dkt. 54 at 14-15).

[6] Again, the parties blend their respective arguments regarding violations of the FDCPA §1692e and FCCPA § 559.72(9). Each violation is addressed separately.

8

"Responsible Party." (Dkt. 40-4). Alternatively, Defendant argues that Plaintiff is required to prove that Defendant had actual knowledge that the debt was invalid. (Dkt. 47 at 23). Neither party provides any authority supporting their respective interpretations of § 1692e.

Section 1692e prohibits debt collectors from using false, deceptive, or misleading representation in connection with collecting a debt. Prohibited conduct includes "the false representation of – the character, amount or legal status of any debt," representing that nonpayment will result in arrest, imprisonment, garnishment, attachment, or sale of property or wages, threatening to "take any action that cannot legally be taken or that is not intended to be taken," or using "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e (2)(a), (4), (5), (10).[7]

In determining whether debt collectors used deceptive means, the standard is whether the least sophisticated consumer would construe the communication as deceptive. *Jeter*, 760 F.2d at 1175. "The least-sophisticated consumer standard is consistent with basic consumer-protection principles. Its purpose is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Bishop v. Ross Earle & Bonan, P.A.*, ___F.3d___, 2016 WL 1169064, at *5 (11th Cir. Mar. 25, 2016) (citations and quotations omitted).

As noted, in support of its contention that the debt was valid, Defendant relies on a lab requisition form and invoice reflecting laboratory services provided to Plaintiff on November 23,

---

[7] *See also Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 395 (4th Cir. 2014) (creditor, who knew or should have known account was paid, violated § 1692e(2)(a) when stated debt had not been satisfied and violated § 1692e(10) when it threatened to report account as past due to credit bureau); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1195-1197 (11th Cir. 2010) (question of fact whether falsely representing that unpaid debt will be referred to a lawyer for immediate legal action constitutes deceptive practice); *Jeter*, 760 F.2d at 1177-1178 (question of fact whether debt collector's letter to take legal action violated §§ 1692e(5), (10)).

9

2011 in the amount of $57.85. (Dkt. 48-4). Plaintiff counters that because of the "Quest Waiver," he should not have owed a debt to Quest. (Dkt. 54 at 15).

The "Quest Waiver" was an apparent agreement between Dr. Hicks and Quest to waive fees for services provided to United Healthcare patients during 2011 or 2012. (Hicks Dep., Dkt. 55-5 at 35:3-15). However, Dr. Hicks testified that he was not aware if the debt was valid, did not have personal knowledge of whether Plaintiff owed a bill, did not communicate with either Quest or Defendant that there was a billing error on Plaintiff's file, and has no personal knowledge of whether a waiver was applied. (Hicks Dep., Dkt. 55-5 at 27:3-8; 28:1-14; 36:18-37:5). In sum, at most, Plaintiff shows that when Defendant initiated debt collection activities, it had not verified the validity of the Quest debt and that there was a possible challenge to the validity of the debt because of the waiver. And Plaintiff provides no reliable evidence from a witness with knowledge of the purported waiver that the underlying debt was invalid, or that Defendant knew the debt was invalid. (Hicks Dep., Dkt. 55-5 at 27:3-8; 28:1-14; 36:18-37:5).

As discussed, when a debt collector initially attempts to collect a debt, it is required to notify the consumer of how to dispute the debt. 15 U.S.C. § 1692g(a). If the debtor disputes the debt, the debt collector must obtain verification of the debt before resuming collection activities. 15 U.S.C. § 1692g(b). However, the debt collector is not required to independently investigate the underlying merits of the creditor's claim that a debt is owed. *Azar v. Hayter*, 874 F.Supp. 1314, 1317 (N.D. Fla.), *aff'd* 66 F.3d 342 (11th Cir. 1995). "Debt" is defined as "any obligation or *alleged* obligation of a consumer to pay money arising out of a transaction . . . ." 15 U.S.C. § 1692a(5) (emphasis added). It follows, therefore, that the FDCPA contemplates that a debt collector may engage in

collection activities on a debt that may be disputed and ultimately determined to be invalid.[8] Accordingly, attempting to collect an unverified debt is not a false or misleading practice. 15 U.S.C. § 1692g(b); *see also Azar*, 874 F.Supp. at 1317.

As noted, the conversations between Plaintiff and the debt collector were limited to identifying the parties, informing that the call concerned an invoice from Quest, updating Plaintiff's contact information, and requests for the bill and/or letter. (Forlizzo Dep. Dkt 55-7 at 18:22-19:6; Dkt. 60). At no point did Plaintiff dispute the debt. (Forlizzo Dep. Dkt. 55-7 at 20:19-21:1; Dkt. 60). Considering the nature of the communications with the collector from a least sophisticated consumer perspective, Plaintiff fails to present evidence that the collector engaged in conduct prohibited by §§ 1692e(2)(a), (4), (5) and (10). The debt collector did not falsely represent the character, amount or legal status of the debt, did not represent that nonpayment would result in arrest, imprisonment or garnishment, did not, with knowledge the debt was paid, threaten to report Plaintiff to a credit agency, did not falsely represent the debt would be referred to a lawyer, and did not threaten to take legal action. (Forlizzo Dep., Dkt 55-7 at 18:22-19:6; Dkt. 60); *see also* 15 U.S.C. §§ 1692e(2)(a), (4), (5), and (10); *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 395 (4th Cir. 2014); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1195-1196 (11th Cir. 2010); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1177-1178 (11th Cir. 1985).

Even viewing the evidence in the light most favorable to Plaintiff, summary judgment in favor of Defendant is appropriate on Plaintiff's claim of §1692e violations. Because the FDCPA

---

[8] Other circuits agree that debt collectors are not required to independently investigate the validity of a debt, but are required to verify the debt when it is disputed. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999) (verification only confirms the amount claimed to be due, and does not constitute vouching for the validity of the debt); *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (statute does not require independent investigation of debt by debt collector).

anticipates collection of debts which may be disputed and ultimately determined not to be owed, Defendant's attempted collection of the unverified Quest debt was not a false or deceptive practice. 15 U.S.C. § 1692g(b); *see also Azar*, 847 F.Supp. at 1317. And other than claiming the debt was invalid, Plaintiff points to no conduct by the debt collector that violated §1692e. (Dkt. 54 at 15). Accordingly, Defendant is entitled to summary judgment on Plaintiff's § 1692e claims.

## II. Count II - Violations of the Florida Consumer Collection Practices Act.

Defendant moves for summary judgment on the alleged violations of FCCPA §§ 559.72(7) and (9). In applying this section, "due consideration and great weight" is given to interpretations of the federal courts related to the FDCPA. Fla. Stat. § 559.77(5). FCCPA §§ 559.72 (7) and (9) provides:

> In collecting consumer debts, no person shall:
>
> (7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.
>
> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist.

### A. Intent to Harass - § 559.72(7)

Similar to its argument under FDCPA § 1692d, Defendant argues that the mere volume of calls alone, without evidence of egregious or harassing behavior, is insufficient to demonstrate a violation of § 559.72(7). (Dkt. 47 at 18-22). The only conduct Plaintiff presents in support of a violation is the frequency of the calls.[9] Plaintiff appears to argue that a violation of the FDCPA

---

[9] As discussed *supra*, he also does not argue that his increased stress, blackouts, or sleep loss support this claim. *See supra* note 5.

12

constitutes a violation of the FCCPA. (Dkt. 54 at 15). "However, the FDCPA and FCCPA are not identical, and a violation of one act does not automatically constitute a violation of the other." *Read v. MFP, Inc.*, 85 So.3d 1151, 1153 (Fla. 2d DCA 2012) (citing *Beeders v. Gulf Coast Collection Bureau, Inc.*, No. 8:09-cv-00458-EAK-AEP, 2010 WL 2696404, at *6 (M.D. Fla. July 6, 2010) *aff'd*, 432 F.App'x 918 (11th Cir. 2011)).

The purpose and frequency of calls are relevant in determining if a debt collector has harassed a debtor in violation of the FCCPA. *Story v. J.M. Fields, Inc.*, 343 So.2d 675, 677 (Fla. 1st DCA 1977).

> *Proof of numerous calls does not make a jury issue on liability* if all must agree the creditor called only to inform or remind the debtor of the debt, to determine his reasons for nonpayment, to negotiate differences or to persuade the debtor to pay without litigation. The trier of fact *may consider such communications harassing* in their frequency, however, *when they continue after all such information has been communicated and reasonable efforts at persuasion and negotiation have failed.* Beyond that point communication 'can reasonably be expected to harass the debtor or his family,' because it tends only to exhaust the resisting debtor's will.

*Id.* (emphases added).

Here, all but two of Defendant's calls went unanswered. (Forlizzo Dep., Dkt. 55-7 at 26:16-19). The two calls which were answered consisted of the debt collector identifying himself and informing Plaintiff of the invoice from Quest, informing Plaintiff of the medical bill, updating his address, and providing an option to view and/or pay the bill online. (Forlizzo Dep., Dkt 55-7 at 18:20-19:6; Dkt. 60). After those two calls, they stopped. (Forlizzo Dep., Dkt. 55-7 at 27:15-17). Since the calls did not continue after reasonable efforts were made to inform Plaintiff of the debt and confirm his contact information, Defendant is entitled to summary judgment on Plaintiff's § 559.72(7) claims as a matter of law. *See Story*, 343 So.2d at 677.

### B.   Validity of the Underlying Debt - § 559.72(9)

Similar to its argument under § 1692e, Defendant argues it is entitled to summary judgment on Plaintiff's §559.72(9) claim because the underlying debt was valid and, assuming the debt was invalid, it lacked actual knowledge that the debt was invalid. In opposition, Plaintiff relies on the "Quest Waiver," as discussed.

That a plaintiff alleges he did not owe a debt is insufficient to create a material factual issue that the debt collector knew or should have known that a debt was invalid. *Schauer v. Morse Operations, Inc.*, 5 So.3d 2, 5-6 (Fla. 4th DCA 2009). Section 559.72(9) "does not provide for recovery if the creditor merely should have known the debt was not legitimate." *Id.* at 6. Further, "[t]o show a violation of section 559.72(9), 'it must be shown that a *legal right that did not exist was asserted* and that the person had actual knowledge that the right did not exist.'" *Read*, 85 So.3d at 1155 (emphasis in original) (quoting *Pollock v. Bay Area Credit Serv., LLC*, No. 08-61101-Civ, 2009 WL 2475167, at *9 (S.D.Fla. Aug.13, 2009)). Accordingly, to prove a violation of § 559.72(9), Plaintiff must demonstrate that Defendant asserted a specific legal right concerning the debt which did not exist and that it knew the right to collect did not exist. *Id.*

As discussed, Plaintiff presents no reliable evidence from a witness with knowledge that the Quest debt was invalid because of the purported waiver agreement between Dr. Hicks and Quest. (*See* Hicks Depo. Dkt. 55-5 at 27:3-8; 28:1-14; 36:18-37:5). Assuming *arguendo* that the debt was invalid, Plaintiff does not dispute that Defendant did not have actual knowledge that the debt was invalid. (Dkt. 54, ¶¶ 1-5). Since the FCCPA does not provide for recovery under these circumstances, Defendant is entitled to summary judgment on Plaintiff's § 559.72(9) claim. *See Read*, 85 So.3d at 1155; *Schauer*, 5 So.3d at 5-6.

### III. Count III: Violations of the Telephone Consumer Protection Act 47 U.S.C. § 227

Lastly, Defendant moves for summary judgment on Count III of Plaintiff's First Amended Complaint, which alleges that Defendant used an ATDS to make the calls to him without his consent, in violation of 47 U.S.C. § 227.[10] Defendant argues it is not liable because Plaintiff has failed to demonstrate that it used an ATDS, an essential element of a TCPA cause of action under §227(b)(1)(A). (Dkt. 47 at 14). Alternatively, Defendant argues that if Plaintiff has stated a cause of action, it is entitled to the "prior express consent" defense. (Dkt. 47 at 8). Plaintiff counters that Defendant's discovery responses, testimony, and expert report show that Defendant utilized an ATDS and Plaintiff did not consent to autodialed calls to his cell phone. (Dkt. 54 at 8-12).

The TCPA prohibits any person from "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A). Autodialed calls made to a debtor from a creditor are permissible, so long as the creditor can show the debtor provided prior express consent. *2008 FCC Ruling*, 23 F.C.C. Rcd. at 565. The TCPA was enacted in response to evidence "that automated or prerecorded calls are a nuisance and an invasion of privacy." *Mais*, 768 F.3d at

---

[10] The FCC has on multiple occasions issued rulings interpreting what qualifies as an ATDS. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 (2015 FCC Ruling)*, 30 F.C.C. Rcd. 7961, 7971-7978, ¶¶ 10-24 (2015); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 (2008 FCC Ruling)*, 23 F.C.C. Rcd. 559, 566, ¶ 13 (2008); *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 (2003 FCC Ruling)*, 18 F.C.C. Rcd. 14014, 14091-93, ¶¶ 131-134 (2003). Dialing equipment that "has the capacity to store or produce, and dial random or sequential number" is an autodialer "even if it is not presently used for that purpose . . . ." *2015 FCC Ruling*, 30 F.C.C. Rcd. at 7971-7972, ¶ 10. Predictive dialers or "equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls" also are autodialers under the TCPA. *Id.* at 7972, n. 39 (quoting *2003 FCC Ruling*, 18 FCC Rcd at 14091, ¶ 131). Further, "parties cannot circumvent the TCPA by dividing ownership of dialing equipment." *Id.* at 7977, ¶ 23. An FCC Ruling has the force of law and a district court is without jurisdiction to consider its validity. *Mais v. Gulf Coast Collection, Inc.*, 768 F.3d 1110, 1121-22 (11th Cir. 2014).

1117 (quoting TCPA §2(9), (13), 105 Stat. at 2394, 2395).

### A.  Automatic Dialing System

In order to prevail on a claim made under § 227(b)(1)(A), Plaintiff must show that the calls were made by an ATDS or a pre-recorded voice. Defendant contends that Plaintiff has not presented evidence that the calls were initiated by an ATDS. Its Rule 30(b)(6) representative, Wollman, testified that Defendant utilized an independent contractor, Aditya Birla Minacs ("Minacs"), to make the calls but he was not familiar with the Genesys Desktop 7.6 phone system used by Minacs to place the calls. (Wollman Dep., Dkt. 61-1 at 10:10-15; 56:1-15; 64:18-65:10). There is evidence that when a call is placed by Minacs to a debtor, Minacs' employees identify themselves as from either Retrieval-Masters or American Medical Collection Agency. (Sareen Dep., Dkt. 55-4 at 22:7-23).

Plaintiff avers that the calls he received originated from 800-804-0057. (Dkt. 54-1, ¶¶ 5-6). Wollman testified that 800-804-0057 is registered to Defendant. (Wollman Dep., Dkt. 61-1 at 60:24-61:8). Wollman also testified that the call logs to Plaintiff show that either Nobel systems or outside vendors made the calls, which were stored in Defendant's Flexible Automated Collection System. (Wollman Dep., Dkt. 61-1 at 47:2-19). Plaintiff's expert, Gary Parker, opines that "Defendant used a predictive dialer and autodialer to place the calls at issue to Plaintiff's cellular telephone as defined by the FCC and the TCPA," based on his review of Defendant's discovery responses, the Genesys Desktop 7.6 Developer's Guide, and Outbound Calling Features for Gensys Desktop 7.6. (Parker Aff., Dkt. 56-1, ¶ 12).

Based on this record, whether or not the calls made to Plaintiff were made by an ATDS as defined by the FCC is a disputed issue of material fact. *See generally 2015 FCC Ruling*, 30 F.C.C. Rcd. 7961. Accordingly, summary judgment is not appropriate.

### B.   Prior Express Consent

Defendant contends it is entitled to the prior express consent defense because "the undisputed facts demonstrate that Plaintiff gave his *prior express consent* to call his cellular telephone through the medical admissions forms signed by Plaintiff at the original creditor's office." (Dkt. 47 at 8) (emphasis in original). Defendant further contends that "the Plaintiff did not revoke his consent, in any form, under the TCPA during any point in the transaction." (Dkt. 47 at 12). Plaintiff avers that he never consented to calls to his cell phone from Quest, Defendant, or Minacs, and never provided his cell phone number for calls regarding billing issues by an ATDS. (Forlizzo Aff., Dkt. 54-1 ¶¶ 9, 12-13).

As discussed, when a phone call is made to a cell phone using an ATDS with the prior express consent of the called party, the TCPA is not violated. 47 U.S.C. § 227(b)(1); *2008 FCC Ruling*, 23 F.C.C. Rcd. at 565. In *Mais v. Gulf Coast Collection Bureau, Inc.*, the Eleventh Circuit considered the meaning of "prior express consent" under the TCPA, as applied to a third party servicer utilized by a hospital. 768 F.3d 1110 (11th Cir. 2014). The court found that even though the cell phone number[11] was only provided to the hospital, consent was deemed provided to the third party servicer because of the express authorization permitting "release [of] the healthcare information for purposes of treatment, payment or healthcare operations." *Id.* at 1124. The court recognized that the prior express consent defense "turns on whether the called party granted permission or authorization, not whether the creditor received the number directly." *Id.* at 1123 (citations omitted). Where "the form explicitly states that the provided information will be used for payment and billing, the patient has the same reason to expect collection calls as a retail consumer."

---

[11] Notably, the cell phone number was not provided by plaintiff/debtor, but by his wife on his behalf.

*Id.* at 1122. As such, courts will look to the documents authorizing consent to determine whether or not the creditor was provided consent to contact the consumer on a cellular telephone.[12]

Dr. Hicks testified that prospective patients complete patient information sheets containing various biographical information, including phone numbers. (Hicks Dep., Dkt. 55-5 at 12:21-13:12). His office also uses medical consent forms. (Hicks Dep., Dkt. 55-5 at 12:10-17). He testified that "all the patients will designate how they want to be called or not be called." (Hicks Dep., Dkt. 55-5 at 33:16-21). This information is placed in his office computer system. (Hicks Dep., Dkt. 55-5 at 22:11-25). When he orders a laboratory service from Quest, he electronically transmits an order form with insurance information and a phone number based on "how the patient decides what number should be used." (Hicks Dep., Dkt. 55-5 at 20:6-13; 21:23-22:10; 23:6-19).

The undisputed record evidence establishes that Plaintiff signed a "Patient Consent for Use and Disclosure of Protected Health Information" ("Jan. 2009 Consent") dated January 4, 2009. (Dkt. 55-6). The Jan. 2009 Consent states: "I hereby give my consent for West Coast Family Medical Care to use and disclose protected health information (PHI) about me to carry out treatment, *payment* and health care operations (TPO) . . . THE PRIMARY MEANS FOR CONTACTING PATIENTS WILL BE TO CALL THEIR HOME NUMBER . . . [b]y signing this form, I am consenting to allow West Coast Family Medical Care to use and disclose my PHI to carry out TPO . . . [and] I may revoke my consent in writing except to the extent that the practice has already made disclosure in reliance upon my prior consent." (Dkt. 55-6) (emphasis added). The form further authorizes West Coast Family Medical Care to call Plaintiff at work. (Dkt. 55-6). The *only* phone number listed for Plaintiff on the

---

[12] The FCC recognizes that consent once given may be revoked. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc.*, 27 FCC Rcd. 15391, 15397, ¶11 (2012). Here, Plaintiff contends he never provided consent so revocation is not an issue.

18

Jan. 2009 Patient Info is the cell number ending -2106. (Dkt. 55-6).

Also in the record is a "Patient Information Sheet" ("Jan. 2013 Patient Info") and a "Patient Consent for Use and Disclosure of Protected Health Information" ("Jan. 2013 Consent"), both signed by Plaintiff. (Dkt. 55-6). The Jan. 2013 Consent states: "I hereby give my consent to West Coast Family Medical Care to use and disclose protected health information (PHI) about me to carry out treatment, *payment* and health care operation (TPO)." (Dkt 55-6) (emphasis added). And like the Jan. 2009 Consent, the Jan. 2013 Consent states: "By signing this form I am consenting to allow West Coast Family Medical Care to use and disclose my PHI to carry out TPO." (Dkt. 55-6). The phone numbers on the Jan. 2013 Patient Info end in -1401 (home) and -2106 (work/cell). (Dkt. 55-6). The Jan. 2013 Consent contains the identical revocation language as the Jan. 2009 Consent.

Plaintiff does not challenge the Jan. 2009 Consent or the Jan. 2013 Consent. Rather, he argues the *Mais* standard is applicable because the language in the Jan 2009 Patient Info does not include a consent. (Dkt. 54 at 5-7, 9, 12). But Plaintiff does not address either the language in the Jan. 2009 Consent permitting West Coast Family Medical Care to use and disclose PHI for payment purposes, the language in the Jan. 2013 Consent permitting West Coast to disclose that information for payment purposes, or that he provided his cellular phone in both Patient Infos. (Dkt. 55-6).

Accordingly, even viewing the evidence in the light most favorable to Plaintiff, it is undisputed that he provided his cell phone number ending in -2106 in the Jan. 2009 Patient Info as an authorized contact phone number, and again in the Jan. 2013 Patient Info (although he provided an additional authorized contact phone number ending in -1401), and both times for payment purposes. Consistent with the disclosures in the Jan. 2009 Consent and in the Jan. 2013 Consent, the phone number was provided to Quest Diagnostics to "carry out treatment, payment, and health care

19

operation." (Hicks Dep., Dkt. 55-5 at 20:6-13; 21:23-22:10; 23:6-19; Dkt. 55-6). Plaintiff offers no evidence that either of the two Consents was revoked. Based on the undisputed record evidence and precedent, Defendant is entitled to prevail on its "prior express consent" defense. *See Mais*, 768 F.3d at 1122-1126. Defendant's motion for summary judgment on Count III is therefore due to be granted.

## Conclusion

Defendant's Motion for Summary Judgment (Dkt. 47) is **GRANTED** in part as to Count I - violations of the FDCPA §§1692e and 1692d(5), Count II - violations of the FCCPA, and Count III - violations of the TCPA. The motion is **DENIED** as to Count I - violations of FDCPA §1692g(a) - failing to provide required validation notice.

**DONE AND ORDERED** this 11th day of May, 2016.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record